UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| America's Collectibles Network, Inc. ) | |
| ) | |
|     *Plaintiff/Counterdefendant*, ) | |
| ) | |
| v. ) | No.: 3:13-CV-335-PLR-HBG |
| ) | |
| The Genuine Gemstone Company, Ltd., ) | |
| ) | |
|     *Defendant/Counterplaintiff*. ) | |

## Memorandum Opinion

America's Collectibles Network ("ACN"), who claims to own U.S. Patent No. 8,370,211 (the "211 Patent"), has brought this action against the Genuine Gemstone Company for allegedly infringing upon the 211 Patent. In response, Genuine Gemstone contends that it, in fact, is the rightful owner of the 211 Patent, and that ACN lacks standing to assert infringement.

On June 18, 2010, The Colourful Company Group acquired Gems TV (UK) Ltd—the then owner of the 211 Patent—through a share purchase agreement. After the transaction was completed, Gems TV (UK)'s former director, Anthony Hillyer, signed a document purportedly assigning Gems TV (UK)'s interest in the patent to a US affiliate that was not part the sale. ACN traces its chain of title back to that assignment. If the assignment was valid, as ACN contends, then ACN is the rightful owner of the 211 Patent, and this suit may proceed. On the other hand, if the assignment was invalid as the defendant claims, then ACN is not the rightful owner of the 211 Patent, and it lacks standing to assert its infringement claim.

After being served, Genuine Gemstone filed a counterclaim seeking a declaration that it had not infringed upon the 211 Patent, that the 211 Patent is invalid, that the 211 Patent is not directed to eligible subject matter, and that the plaintiff lacks standing to assert infringement

because it does not own the 211 Patent. Genuine Gemstone has moved for summary judgment on its counterclaim. Alternatively, it has moved to dismiss ACN's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. The issues have been extensively briefed, and are now ripe. For the reasons that follow, Genuine Gemstone's motion to dismiss will be granted. Its motion for summary judgment will be denied as moot.

I.

When a defendant challenges subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). A Rule 12(b)(1) motion may challenge the sufficiency of the complaint itself, in what is known as a facial attack, or it may challenge the factual existence of subject-matter jurisdiction, which is known as a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In ruling on a facial attack, the court accepts as true the allegations of the complaint and construes them in a light most favorable to the plaintiff. *DLX v. Kentucky*, 381 F.3d 511, 516 (6th. Cir. 2004). On the other hand, when faced with a factual attack, the court does not presume that the complaint's allegations are true, and it may resolve factual disputes when necessary. *Madison-Hughes v. Shalala*, 80 F.3d at 1130.

This case involves a factual attack. Genuine Gemstone contends that ACN does not own the 211 Patent, and therefore lacks standing to assert infringement claims. Accordingly, ACN's allegations are not presumed to be true, and this Court must resolve whatever factual disputes are necessary to determine if the plaintiff has standing.

2

II.

While both parties have alleged numerous facts, some of which are disputed, and some of which are not, the facts necessary to resolve this matter are fairly straightforward. Prior to June 18, 2010, Gems TV (UK) Ltd., a British company, was a wholly-owned subsidiary of Gems TV Holdings Ltd., a Cayman Islands company. At that time, Gems TV (UK) owned multiple patents, including the 211 Patent. On May 5, 2010, Gems TV (UK) agreed to assign one of its other patents (the "Other Patent") to Gems TV Holdings. [R. 60-3, Fudger Aff. Ex. 3, Page ID 830]. A week later, on May 12 2010, Gems TV (UK) entered into a share purchase agreement with the Colourful Company Group Limited (also a British company) whereby the Colourful Company would purchase Gems TV (UK), in its entirety, as a going concern.

The share purchase agreement prohibited Gems TV (UK) from granting, modifying, agreeing to terminate, or permitting the lapse of any of its intellectual property rights prior to completion of the sale without first obtaining written consent from the Colourful Group. [R. 73-7, Share Purchase Agreement, Page ID 1363]. Likewise, Gems TV (UK) was forbidden from entering into any agreement relating to any such intellectual property rights without the Colourful Group's written consent. [*Id.*].

Gems TV (UK) and the Colourful Group set June 18, 2010, as the completion date for the sale. On that date, Gems TV (UK) held an "Extraordinary General Meeting" of the shareholders at 3:00 a.m. UK time to complete the sale. The purpose of the early meeting and completion was to ensure that "all Friday's trading belongs to [the Colourful Group] and . . . [the new directors of Gems TV (UK)] have control of Gems UK by start of play that day." [R. 73-12, Bennett Affidavit, Page ID 1419]. As part of the transaction, and also to ensure that control of the Gems TV (UK) was in the hands of its new directors by the start of business on the completion date,

3

Anthony Hillyer entered into a compromise agreement and resigned as a director of Gems TV (UK) effective at 6:45 a.m. UK time the morning of the completion.

The sale was completed by 7:13 a.m. UK time on June 18, 2010, when counsel for Gems TV Holdings Ltd emailed counsel for the Colourful Company to say "Congratulations – we have now completed on the share sale, and Coloured Rocks is now the beneficial owner of Gems [TV] (UK)." [R. 73-15, Bennett Affidavit Ex. 22, Page ID 1430]. Shortly thereafter, Daniel Thong, an associate of Jason Choo (the chairman of Gems TV Holdings) who worked on the sale sent an email to Anthony Hillyer, Jason Choo, and Richard Fudger (the financial director of Gems TV (UK) both before and after the sale) informing them that assignment of the 211 Patent had been "overlooked." Counsel for the Colourful Group was not copied. Mr. Thong attached an addendum to the email purportedly transferring the 211 Patent from Gems TV (UK) to Gems TV Holdings, and asked Anthony Hillyer to execute and return it. [R. 60-3, Fudger Affidavit, Ex. 3, Page ID 830]. Mr. Hillyer did so sometime after 8:00 a.m. UK time on June 18, 2010.

ACN's purported ownership of the 211 Patent at present day is based on tracing its chain of title back to the addendum executed by Mr. Hillyer after completion of the Gems TV (UK) sale. If the 211 Patent was not transferred to Gems TV Holdings, ACN has no claim to ownership of the 211 Patent and no standing to assert infringement against Genuine Gemstone.

III.

This case revolves around whether or not the addendum Mr. Hillyer executed is valid. It is not. The Gems TV (UK) sale was completed by 7:13 a.m. the morning of June 18, 2010. Anthony Hillyer had previously executed a compromise agreement and resigned as a director of Gems TV (UK) effective at 6:45 a.m. that day. When Mr. Hillyer executed the addendum to assign the 211 Patent sometime after 8:00 a.m. on June 18, 2010, ownership of the 211 Patent

4

(along with the rest of Gems TV (UK) had already been transferred to the Colourful Group, and Mr. Hillyer had resigned from his position as director of Gems TV (UK) Ltd. Mr. Hillyer clearly lacked the authority to transfer Gems TV (UK)'s intellectual property at the time he executed the addendum. The addendum is, therefore, invalid.

ACN nevertheless offers several arguments for the validity of the assignment. *First*, ACN claims that, while the addendum was executed after the actual Completion, it is still valid because it was signed on the Completion Date; *second*, ACN argues that Mr. Hillyer did not know he lacked the authority to execute the addendum; *third*, ACN claims that the parties intended all along for the 211 Patent to be transferred to Gems TV Holdings and not included in the Gems TV (UK) sale, and that the contract should be interpreted to reflect the parties' intent; and *finally*, ACN contends that Genuine Gemstone should be estopped from claiming ownership of the 211 Patent.

     *i.*    *Completion and Mr. Hillyer's Authority to assign the 211 Patent*

ACN argues that the addendum was signed on the Completion Date and is therefore valid, regardless of the actual time of Completion. This position is unsupported. The timing of Completion for the Gems TV (UK) sale was carefully planned, and though ACN attempts to obfuscate the difference between "Completion" and "Completion Date," these two defined terms are not the same. The Completion of the transaction occurred at some point on the Completion date. The Extraordinary General Meeting of the shareholders commenced at 3:00 a.m. UK time to ensure that the transaction was complete by the opening of business later that morning so that "all [the day's] trading belongs to [The Colourful Group] and [the new directors] have control of Gems UK by start of play that day." The transaction was not structured so that the new officers would have control beginning at 12:00 a.m. on June 19 (the day after the Completion Date); it

5

was structured to be complete early in the morning with ownership and control fully transferred to the Colourful Group. While Mr. Hillyer undisputedly signed the addendum on the Completion Date, the Completion itself had already occurred, Gems TV (UK) belonged to the Colourful Group, Mr. Hillyer had resigned, and new directors had taken control. It would not have mattered whether Mr. Hillyer signed the addendum five minutes after Completion (and still on the Completion Date) or a month later, the result would have been the same.

ACN also claims that Mr. Hillyer was unaware that he lacked the authority to execute the addendum and bind Gems TV (UK). That could be true. Mr. Hillyer may have believed he was acting on behalf of Gems TV Holdings when he signed the addendum, and he also may have not understood that his employment with Gems TV (UK) had already been terminated, but his subjective beliefs as to his authority or lack thereof does not change the fact that he no longer worked for Gems TV (UK) and could not bind the company.[1] It is clear from the contract documents and the undisputed timing of the Completion and execution of the addendum that Mr. Hillyer no longer had the authority to bind Gems TV (UK), and the addendum is invalid.

    *ii.    The Parties' Intent*

To avoid this result, ACN argues that the construction of contracts under English law is governed by the "objective" principal whereby the terms of a contract are determined by what a reasonable person would take the parties to have intended. ACN claims that "there can be no question what a reasonable person would have believed the parties intended [in this case] – [that] the [211 Patent] was to be owned by Gems TV Holding after the sale of [Gems TV (UK)] to Colourful Group." [R. 77, Plaintiff's Response, Page ID 1494].

In support of this contention, ACN asserts that everyone connected with the transaction

---

[1] The parties strenuously dispute whether Mr. Hillyer was or was not aware that the sale had completed. Resolution of that dispute is unnecessary because it would not change the result.

has admitted that the sale was only for the UK business and that it had no relation to Gems TV America. This does not advance ACN's case. The 211 Patent is an American patent, but Gems TV (UK) owned it. The 211 Patent belonged to the "UK business" and had to relation to Gems TV America or any other entity owned by Gems TV Holding. A share purchase of the UK business would include all property belonging to the UK business, including the 211 Patent.

The only time the US patents came up in negotiating the sale, according to ACN, was in the context of what Gems TV (UK) was not going to receive as part of the sale. Because the sale took the form of a stock purchase agreement, instead of an asset sale, Gems TV (UK) and all of its assets as a going concern would become property of the Colourful Group. Only those assets transferred from Gems TV (UK) to another entity prior to the sale would not go to the Colourful Group. In an effort to show that the 211 Patent was meant to be transferred out of Gems TV (UK) and not included in the sale, ACN points to a March 19, 2010, email from Mr. Choo to Steve Bennett (of the Colourful Group) containing a number of discussion points about the transaction. Paragraph 8 of that email read as follows:

> There is a patent filed in the USA by Gems UK which is currently being assigned to Gems TV Holdings Ltd as this is part of the IP going to JTV. The UK patent pending will still be in Gems UK when you buy it however. What is being transferred is only the USA filing. This is more just for your information.

According to ACN, the US patent to which Mr. Choo refers is the 211 Patent. Mr. Bennett replied to the email and responded to each of the discussion points except for paragraph 8. ACN considers Mr. Bennett's failure to respond or deny Mr. Choo's assertion as evidence of his agreement that the 211 Patent was to be transferred to Gems TV Holdings. This line of reasoning is not supported by the record.

There is reason to believe that the US patent referenced by Mr. Choo is for the Other Patent that Gems TV (UK) agreed to assign to Gems TV Holdings on May 5, 2010, just before

7

the parties entered into the share purchase agreement. This conclusion is supported by the language in the share purchase agreement prohibiting the subsequent transfer of intellectual property, including the 211 Patent. To transfer the 211 Patent from Gems TV (UK) to Gems TV Holdings, Gems TV (UK) would have needed to obtain written permission from the Colourful Group, a fact not alleged by ACN. ACN admits that the patents were never mentioned in the negotiations again.

Though not part of the negotiations, ACN contends that a circular distributed to Gems TV (UK)'s shareholders for approval of the sale to the Colourful Group acknowledged the transfer of the 211 Patent. The circular does reference payments made from Gems TV (UK) to Gems TV Holdings that would include information technology systems relating to the reverse auction television and internet-based sales as well as relevant intellectual property and copyrights associated with North America. This reference is too vague to conclude that Gems TV (UK) and the Colourful Group shared a common understanding that the 211 Patent would be going to Gems TV Holdings.

ACN's intent argument, which is almost entirely based on Mr. Choo's discussion-points email and an unspecific reference in a circular sent to Gems TV (UK)'s shareholders, is simply too weak to show a common intent and override the fact that Mr. Hillyer lacked the authority to transfer the 211 Patent.

    *iii.*    *Estoppel*

Finally, ACN claims that Genuine Gemstone should be estopped from contesting the validity of the transfer because Genuine Gemstone did not prosecute the 211 Patent after Completion. The estoppel argument fails under both English and US law. Under English law, for an estoppel of convention to arise, there must be a common assumption shared between the

8

parties to a transaction. [R. 94, Wardell Opinion, Page ID 1976 (citing *Amalgamated Investment & Property Co Ltd v. Texas-Commerce International Bank Ltd* [1982] QB 84 at 122)]. As discussed above, ACN has not proven a shared intent or understanding relating to the 211 Patent.

Under US law, ACN must establish that Genuine Gemstone, through misleading conduct, led ACN to reasonably infer that it did not intend to bring an ownership claim against ACN. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041-43 (Fed. Cir. 1992). Misleading conduct based on inaction "must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id.* at 1042. Apart from its inaction, there is no evidence of such conduct on the part of Genuine Gemstone, who apparently did not learn about the Patent until receipt of a demand letter from ACN in June 2013.

To be clear, this Court is not holding that Genuine Gemstone is the lawful owner of the 211 Patent. This opinion only considers whether ACN has met its burden of establishing standing. Because ACN has not done so, this Court is without subject-matter jurisdiction. Genuine Gemstone's counterclaims relating to infringement, validity, and patent eligibility are moot, and will be dismissed as such.

IV.

For the foregoing reasons, Genuine Gemstone's motion to dismiss for lack of standing [R. 55] is **Granted**. Genuine Gemstone's motion for summary judgment [also R. 55] is **Denied as Moot**. ACN's motion for leave to file a *Surreply* [R. 95] is **Denied as Moot**.[2] This case will be dismissed in its entirety.

---

[2] ACN seeks leave to file a surreply addressing issues relating to Mr. Hillyer's understanding of his authority and the timing of the Completion that were first raised in the defendant's reply. Because a finding relating to Mr. Hillyer's subjective beliefs is not necessary in determining whether he had the authority to bind Gems TV (UK), the Court did not consider any of the parties' arguments relating thereto.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**